UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVEN FORTH,

    Plaintiff,

v.

THE KROGER COMPANY, an Ohio corporation,

    Defendant.
_____/

Case No. 09-cv-13458

HONORABLE STEPHEN J. MURPHY, III

# ORDER GRANTING THE KROGER COMPANY'S MOTION FOR SUMMARY JUDGMENT (docket no. 13) AND DISMISSING CASE

Keven A. Forth brought this lawsuit against his former employer, The Kroger Co. ("Kroger"), after the company allegedly defamed him upon terminating his employment. The two counts in his complaint, "defamation" and "self-defamation," arise entirely under Michigan common law, and jurisdiction is proper in this Court based on diversity of citizenship, 28 U.S.C. § 1332(a). The Court now has before it a motion for summary judgment on both counts filed by Kroger. Fed. R. Civ. P. 56(c). The Court finds that Kroger has successfully carried its burden of showing that neither of Forth's claims presents a factual question that can be properly be placed before a jury. Accordingly, it will enter judgment for Kroger on both counts and dismiss this case.

## FACTS OF THE CASE

The incident that gave rise to this dispute took place on August 5, 2008. At the time, Forth worked for Kroger as a grocery manager at its Lake Orion, Michigan store. Pl. Resp. 5. Forth punched out after his daily shift at approximately 5:30 in the afternoon, took a shopping cart, and began gathering items for personal purchase. Forth Dep. 79. A

member of the security staff at the store, Sharon Puckett, began observing Forth because she noticed how quickly he was moving through the store.  Def. Mot. Ex. E.

Forth began his shopping by retrieving a DVD player and an electric knife that the store once used as display items from the office of another store manager, Todd Ransom.  Def. Mot. 2, ¶ 5.  Forth testified that Ransom told him in April he could purchase those items, a story Ransom later confirmed.  *Id.*  Next, Forth went to the meat section of the store.  After talking briefly with Ron Keller, the meat manager, Forth took packages of discounted meat from a cooler in the back of the store that was not available to the public and, with Keller's help, placed that meat into his shopping cart.  *Id.* ¶ 6.  Much of the meat was double-wrapped in a manner that security staff at the store deemed unusual, as it permitted checking out with two items while scanning only one at the register.  *Id.* at 4, ¶ 11.  Forth claimed not to notice anything suspicious about the wrapping.[1]

The managers at the Lake Orion Kroger store later discovered that sometime before Forth began shopping, a Kroger employee lowered the prices on the meat Forth took, by using an electronic pricing device called a Texlon.  *Id.*; Def. Mot. Ex. M.  Kroger believes that Forth performed the discounts, because his Texlon user name was attached to them.  Def. Mot. 5, ¶ 12.  Forth contends that while the discounts were tagged to his Texlon user name, another employee made the discounts in his name after Forth borrowed a Texlon device from to mark down different items and forgot to log himself out of the system.  *Id.*  He further claims that the meat he took was available for public sale earlier in the day, and that he asked a coworker to move it to the back of the store so he could purchase it once he was on break.  *Id.* ¶ 10.  It is undisputed that Kroger's policy at this time was that

---

[1] Kroger also fired Keller, who wrapped the meat, for his alleged role as an aider and abettor of Forth's actions.  Def. Mot. 6, ¶ 14.

2

employees could not personally discount merchandise they intended to purchase for themselves. Def. Mot. Ex. C, at 23.

Forth then made his way to a self-checkout kiosk to complete his purchase. *Id.* 3, ¶ 7. The employee running the self-checkout area, Carol Thompson, approached Forth as he appeared to be having difficulty making purchases. *Id.* Thompson said that Forth refused her help, while Forth claims that it was *he* who called Thompson over in order to ask for assistance in purchasing the DVD player and electric knife, which were not in their original packaging. *Id.* Forth further asserts that he thought Thompson entered the two items into her hand scanner, manually. *Id.* Before Forth could leave, he was stopped by Kroger's security personnel, and taken to their office for questioning. *Id.* 4, ¶ 9. Forth's receipt did not include the DVD player and knife. *Id.* Ex. I. After further questioning, the security personnel were alerted to the suspicious nature of Forth's meat purchases. Store management suspended Forth's employment after the interview, and in a letter sent to his home the next day, August 6, 2010, Kroger terminated Forth for violation of store rule 17, prohibiting "theft or misappropriation of property of employees, customers or of the company." Def. Mot. Ex. C, at 25; Ex. N.

Forth recalled telling four people who worked at Kroger about Kroger's rationale for firing him: Jenny Stephenson, the union steward; Dave Scott and Christine Dembrowski, two of his coworkers at Kroger; and Forth's wife, who was and is still employed at the Lake Orion Kroger store.[2] Forth Dep. 28–32. Forth claimed that sometime after these disclosures, word made its way "through the grapevine" about his termination, and soon

---

[2] Forth asserts twice in his response brief that Dembrowski and Scott *confronted* him about what took place, which suggests someone else told the two of them about Forth's discharge. *See, e.g.*, Pl. Resp. 10, 17 n.9. But Forth said in his deposition that *he* "talked to other people and told them what I was being accused of," and identified Scott and Dembrowski as the people he told. Forth Dep. 31.

everyone in the store knew about why he was fired.  *Id.* 28–29.  During work at new jobs he took after his termination, Forth claimed that vendors from companies that also dealt with Kroger approached him with questions about the incident.  Pl. Resp. 10.  When seeking new employment, Forth did not generally disclose the reason he was fired by Kroger.³  Def. Mot. 6–7, ¶ 15.  In addition, Forth filed a union grievance in relation to his termination, but the union refused to pursue the claim, claiming insufficient evidence.  Def. Mot. Ex. B.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).  A "genuine" dispute over material facts is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must take care, in evaluating the motion, not to make judgments on the quality of the evidence, because the purpose of summary judgment is to determine whether a triable claim exists, and not to provide a substitute for the rigors of fact-finding through trial.  *Doe v. Metro. Nashville Public Schools*, 133 F.3d 384, 387 (6th Cir. 1998) ("[W]eigh[ing] the evidence . . . is never appropriate at the summary judgment stage.").

---

³   Forth disclosed information regarding his termination in interviews with Meijer and Edy's Ice Cream.  On both occasions, he explained his side of the story and received a job offer.  Def. Mot. 6–7, ¶ 15.  He also received a job at K-Mart after euphemistically describing what happened to him at Kroger as a "disagreement with management."  *Id.*

The moving party bears the initial burden of demonstrating that the standard of Rule 56 is met. In making this evaluation, the facts are read in the light most favorable to the party opposing summary judgment. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 335 (6th Cir. 2010). Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. This cannot be done by showing just "a scintilla of evidence" supporting the non-moving party, or by presenting evidence that is "merely colorable" and "not significantly probative." *Id.* at 249–50, 252. Rather, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249–50. If the non-moving party successfully carries its burden, the case can properly go to trial and summary judgment is not appropriate.

## ANALYSIS

I. <u>Defamation</u>

Under the common law of Michigan, defamation requires proof of the following elements:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party [ie, "publication"], (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Mitan v. Campbell*, 474 Mich. 21, 24 (2005). Michigan courts require each element to be "specifically plead[ ], including the allegations with respect to the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the alleged defamatory words." *Gonyea v. Motor Parts Federal Credit Union*, 192 Mich. App. 74, 77 (1991). Federal district courts, sitting in diversity, also adopt this standard of

5

specificity. *Savage v. Lincoln Benefit Life Co.*, 49 F. Supp. 2d 536, 541 (E.D. Mich. 1999); *Cole v. Knoll, Inc.*, 984 F. Supp. 1117, 1134 (W.D. Mich. 1997) (requiring that the elements be "specifically pleaded *and proved*") (emphasis added). Kroger's motion focuses on the second element, publication. The Court agrees with Kroger that Forth has not created an issue of material fact on the question of whether or not Kroger is responsible for the publication of any statement about Forth.

Kroger admits that Forth's supervisors made statements to Forth and to union representatives about his termination.[4] Def. Mot. 15. Otherwise, the only other person known to have disclosed details of the termination is Forth himself. He testified in his deposition that he told his wife — who also worked at the Kroger in Lake Orion — and coworkers Stephenson, Scott, and Dembrowski about what happened. Forth does not identify, by name, any individual that spread rumors about him at Kroger.[5] Instead, he attempts to show that Kroger should be held responsible for the rumors by arguing a negative. According to Forth, everyone in the Lake Orion Store "knew" that Forth was fired for an alleged theft, and management was in a position to make such a story generally known. On the implicit assumption that nobody whom Forth told about his discharge told

---

[4] Despite suggestions to the contrary by Forth, the termination letter Kroger sent to Forth cannot serve as a basis for defamation because Forth is the person being "defamed" in the letter. *See Grist v. Upjohn Co.*, 16 Mich. App. 452, 483 (1969).

[5] Forth argues that he is not to be blamed for his failure to name specific Kroger employees or managers that defamed him, calling the burden for demonstrating defamation under Michigan law "unrealistic" because he could not be present at the store where he alleges his supervisors made the statements. Pl. Resp. 16. This argument would perhaps carry weight in response to a motion to dismiss, *see* Fed. R. Civ. P. 12(b)(6), at which stage it would be inappropriate for the Court to dispose of a claim that lacked the sort of "detailed factual allegation[s]" that can only be made after discovery. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But Forth *has* had an opportunity for discovery, and he cannot blame the Kroger entity as a whole if his efforts to discover facts sufficient to survive a summary judgment motion were unavailing.

anyone else about it — which the Court will indulge on summary judgment — Forth reasons that the Lake Orion store management must have been responsible for spreading the news, because no one else could have done so. Pl. Resp. 16–17. Forth has no legal justification for proving publication in this manner, and the Court will not extend Michigan's defamation law to recognize it.

The Court finds *Cole*, discussed in Kroger's brief, to be particularly persuasive authority for rejecting Forth's theory. In that case, the plaintiff alleged slander against an employer on the basis of "repetition by unnamed management employees of allegedly false accusations of sexual harassment." *Cole*, 984 F. Supp. at 1133. After conducting discovery, the plaintiff remained unable to "pinpoint any particular statement made by any particular supervisory employee" about the accusations. *Id.* 1134. The Court granted the defendant's motion for summary judgment on the libel charges, holding that accusations by a plaintiff of false "rumors . . . circulating in the workplace" were not trial worthy. *Cole*, 984 F. Supp. at 1134. The Court agrees with *Cole* that it cannot be held responsible for mere rumors without more specific facts linking persons with corporate authority to the dissemination of those rumors. *See also Stencel v. Augat Wiring Sys.*, 173 F. Supp. 2d 669, 680 (E.D. Mich. 2001) (concluding, on a motion to dismiss, that a defamation claim against a corporation where the plaintiff failed to name the person who made the statement as a co-defendant was not plead with sufficient detail).

Additionally, the statements Kroger admits its managers made to Forth and union supervisors regarding the alleged theft are subject to a conditional privilege, and Forth has not created an issue of material fact as to that privilege's applicability. Def. Mot. 13. Under Michigan law, "[a]n employer has the qualified privilege to defame an employee by making statements to other employees whose duties interest them in the subject matter." *Gonyea*,

7

192 Mich. App. at 78–79. The buffer from liability created by this privilege allows employers to fully discuss the suitability of their employees. *Merritt v. Detroit Mem. Hosp.*, 81 Mich. App. 279, 285 (1978) ("Employees responsible for hiring and firing are entitled to hear accusations of employee misconduct which warrant dismissal and preclude rehiring."); *see also Cole*, 984 F. Supp. at 1134 ("Supervisory employees have an undoubted need to comment to each other on the qualifications, morals, and work habits of employees."). A plaintiff can only overcome this privilege if he or she shows that the employer made the statements with "actual malice, that is, knowledge of [their] falsity or reckless disregard of the truth." *Gonyea*, 192 Mich. App. at 80. Malice must be alleged with some level of specificity in order to create a triable issue of fact. *Prysak v. R.L. Polk Co.*, 193 Mich. App. 1, 15 (1992); *Gonyea*, 192 Mich. App. at 81.

The Court agrees that any statements made by Forth's supervisors to Forth and union representatives fall under the qualified privilege. Other than his specious argument about the "rumors" swirling around the Lake Orion store, Forth presents no evidence that his supervisors told persons without an interest in his employment situation about the alleged theft.[6] Forth asserts that "Kroger was callous towards [him], and reckless at best, in making the accusations [ ] and decision to terminate [him]," but these are the sorts of general accusations of actual malice that, under Michigan law, are insufficient to create a question of material fact on a question of privilege. Pl. Resp. 3. The facts show, at best, a misunderstanding between Forth and the store managers that led to a slipshod investigation and a hasty discharge, but that is not the sort of evidence of "malice" capable

---

[6] On the contrary, Forth's submissions to the Court indicate that management did *not* make such comments. Pl. Resp. Ex. B, pg. 7, 11–14 (Counsel: "But you never heard anybody from management say the word stealing?" Stephenson: "I'm trying to think. No. Not . . .").

of creating a triable issue of fact in regard to the privilege's applicability under Michigan law. Therefore, summary judgment for Kroger on this count is appropriate.

　　II. Self-Defamation

The parties agree that the theory of self-defamation under Michigan's common law arises from a single case, *Grist v. Upjohn Co.*, 16 Mich. App. 452 (1969).[7] *See also Rueckert v. City of Flint*, 997 F. Supp. 856, 866 (E.D. Mich. 1998) (acknowledging that no other Michigan case has agreed with a plaintiff's use of this theory). Self-defamation is not truly a separate theory of tort liability from defamation, even though Forth alleged it as a separate count. It is more accurately described as an alternative method of alleging publication. *Grist* held that when "the utterer of the defamatory matter intends or has reason to suppose that in the ordinary course of events the matter will come to the knowledge of some third person, a publication may be effected." *Grist*, 16 Mich. App. at 485. The Court finds that Forth's situation is not sufficiently analogous to *Grist* to permit recovery under self-defamation.

*Grist* is distinguishable from this case because self-defamation requires an element of compulsion that is lacking here. Cases that recognize self-defamation require that the plaintiff had no choice but to repeat the defamatory remark to others. *Grist*, 16 Mich. App. at 458 ("[Plaintiff's] reasons for discharge were necessarily repeated by her to prospective employers upon their questioning her concerning past employment . . . ."); *see also Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 886 (Minn. 1986) ("[I]f a defamed person was in some way compelled to communicate the defamatory statement

---

[7] It is Kroger's position that *Grist*, a Michigan Court of Appeals case which has not been followed for over forty years, is no longer good law. While the Court shares Kroger's reservations, it need not reach this issue, as it believes Forth could not make out a self-defamation claim even if the Michigan Supreme Court were to recognize the validity of *Grist*.

9

to a third person, and if it was foreseeable to the defendant that the defamed person would be so compelled, then the defendant could be held liable for the defamation."). For example, in a leading case from the Georgia Court of Appeals on self-defamation that *Grist* relied upon heavily, the plaintiff successfully pled self-defamation when a libelous statement from a former employer was included on a World War II-era employment form he was legally required to provide to prospective employers. *Colonial Stores, Inc. v. Barrett*, 73 Ga. App. 839, 839–41 (1946). In the only Michigan case addressing this point, the Michigan Court of Appeals held that self-defamation was unavailable when the alleged victim had discretion in making the defamatory statement. *McMillin v. Fumich*, Nos. 232067 & 232068, 2002 WL 31953825, at *4 (Mich. Ct. App. Dec. 13, 2002) (finding *Grist* inapplicable where plaintiff "voluntarily chose to release . . . details to certain people, while simply telling other people that he had 'retired.'")

In this case, Forth could, and did, exercise such discretion, as the plaintiff in *McMillin* did. He chose not disclose the reason for his termination in paper job applications. Def. Mot. 7, ¶ 15 & Ex. O. Forth admits that in an interview with K-Mart, he simply told the employer that a "disagreement with management" prompted his firing. Forth Dep. 18. In interviews with Edy's Ice Cream and Meijer, he disclosed the reasons for termination, but also offered his own explanation, and both companies eventually hired him. Def. Mot. 7, ¶ 15. Forth's assertion that he had to "provide[ ] the damning information in personal interviews" misrepresents his own deposition testimony and is unsupported by the record. Pl. Resp. 18. Even if the Michigan Supreme Court were to recognize self-defamation as a valid way of pleading publication in defamation cases, the Court holds that it cannot apply to Forth and grants summary judgment to Kroger on this count.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Kroger's motion for summary judgment (docket no. 13) is **GRANTED**, and that this case is **DISMISSED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 5, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 5, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager